**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JERROD CURTIS,<br><br>Defendant. | CASE NO. 3:25-cr-00157-1<br><br>(SAPORITO, J.) |

## ORDER

This matter comes before the court on the defendant's motion to sever defendants for trial. Doc. 436.

The defendant is currently scheduled for a joint jury trial, along with two co-defendants, commencing on August 27, 2026. At the time when this motion was filed, the jury trial had been scheduled to commence on June 26, 2026. The court had continued the joint jury trial from June to August due to a recent substitution of counsel for one of Curtis's co-defendants, Daniel Chavis, which had been precipitated by the development of a conflict of interest.[1]

[1] Chavis's original defense counsel, Curt M. Parkins, Esq., moved to withdraw on May 6, 2026, promptly after the development of a conflict of interest due to Parkins's prior representation of a co-defendant. On May 7, 2026, we granted Parkins's motion to withdraw and directed that a new attorney be appointed to represent him. On May 11, 2026, Cornelius

*(continued on next page)*

In his motion, Curtis requests that his trial be severed from those of his co-defendants, pursuant to Rule 14 of the Federal Rules of Criminal Procedure. In support, Curtis argues that there is a serious risk that the 62-day delay of a joint jury trial from June 26, 2026, to August 27, 2026, will compromise his speedy trial rights, causing clear and substantial prejudice and resulting in a manifestly unjust trial. In particular, he argues that previous continuances of the joint jury trial in this case have permitted the government to pursue a "divide and conquer" strategy against Curtis and his co-defendants, with several of those co-defendants having opted to plead guilty. But Curtis does not identify any particular prejudice that would be caused by the 62-day delay currently at issue.

"We begin with the fundamental principle that the federal system prefers joint trials of defendants who are indicted together because joint

---

J. Rotteveel, Esq., was appointed by the court to represent Chavis. Shortly after his appointment, while reviewing discovery, Rotteveel learned of a potential conflict of interest due to his concurrent representation of another individual named in the discovery materials. Rotteveel conferred with both clients to determine whether they were willing to waive the potential conflict, but Chavis declined to waive, and Rotteveel moved to withdraw on May 27, 2026. On May 29, 2026, we granted Rotteveel's motion to withdraw and directed that a new attorney be appointed to represent him. On June 3, 2026—twenty-three days before trial was scheduled to commence—Kyle W. Rude, Esq., was appointed to represent Chavis.

trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)) (internal quotation marks and brackets omitted). This preference is particularly strong in cases involving multiple defendants charged under a single conspiracy, as joinder may "aid the finder of fact in determining the full extent of the conspiracy and prevent the tactical disadvantage to the government from disclosure of its case." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citation and internal quotation marks omitted).

Thus, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "Defendants seeking to sever bear a 'heavy burden,' and must demonstrate . . . that the denial of severance would lead to 'clear and substantial prejudice resulting in a manifestly unfair trial.'" *Urban*, 404 F.3d at 775. "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506

U.S. at 540. "Mere allegations of prejudice are not enough." *Urban*, 404 F.3d at 775–76 (quoting *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981)).

The defendant argues that this 62-day continuance may compromise his speedy trial rights. Although the prospective violation of a defendant's speedy trial rights might conceivably support severance in some circumstances, *see, e.g.*, *United States v. Serafini*, 7 F. Supp. 2d 529, 555 (M.D. Pa. 1998), this case presents no such circumstance. Continuance of the joint jury trial in this case until August 27, 2026, will not result in a violation of Curtis's statutory or constitutional rights to a speedy trial.

**A. Speedy Trial Act**

In his motion papers, Curtis has referenced only the risk of a violation of his *constitutional* speedy trial right. He has not referenced the Speedy Trial Act at all. But, as the Third Circuit has recognized, "it will be an unusual case in which the Speedy Trial Act is followed but the Constitution violated. In other words, a violation of the Speedy Trial Act is generally a necessary condition for a holding that there has been a Constitutional violation." *United States v. Rodriguez-Mendez*, No. 22-

1422, 2023 WL 3378005, at *4 (3d Cir. May 11, 2023) (citations, internal quotation marks, and brackets omitted). So we begin our analysis with the Speedy Trial Act.

With respect to Curtis, the Speedy Trial Act clock began running on September 24, 2025, the date when the superseding indictment in this case was unsealed and made public. *See* 18 U.S.C. § 3161(c)(1); *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993). *See generally United States v. Chavis*, No. 3:25-cr-00157-05, 2026 WL 2186885, at *1–2 (M.D. Pa. July 29, 2026). At that time, however, a motion by the government to continue Curtis's jury trial was pending, and that motion was granted on September 25, 2025, making the period from September 24, 2025, through September 25, 2025, excludable under § 3161(h)(1)(D). In that September 25, 2025, order, the court continued Curtis's jury trial until November 10, 2025, and expressly found that the ends of justice served by the continuance outweighed the speedy trial interests of the public and the defendants, making the entire period through the November

2025 trial date excludable under § 3161(h)(6) and (h)(7)(A).[2,3]

On October 22, 2025, Curtis filed his own motion to continue. That same day, the motion was granted, with Curtis's jury trial scheduled to commence on December 8, 2025. In that order, the court expressly found that the ends of justice served by granting the requested continuance outweighed the speedy trial interests of the public and the defendant, making the entire period through the December 2025 trial date excludable under (h)(7)(A).[4]

On October 28, 2025, one of Curtis's co-defendants, Reneard Harris, filed a motion to continue. On November 4, 2025, the court entered an

---

[2] We reached this finding that the ends of justice served by granting the requested continuance outweighed the best interest of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including the complexity of the case due to the number of defendants—nine at the time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled.

[3] This time period was excludable for other reasons as well. For example, the last of Curtis's co-defendants, Chavis, did not make his initial appearance until October 30, 2025, making the period from September 24, 2025, through October 30, 2025, excludable under § 3161(h)(6). A variety of pretrial motions were filed by the government and other co-defendants, resulting in other brief periods of excludable time under (h)(1)(D) and (h)(6), but these time periods all overlap those discussed in the main text above.

[4] *See supra* note 2.

order granting that motion to continue and setting the defendants down for a joint jury trial scheduled to commence on March 16, 2026. In that order, the court expressly found that the ends of justice served by granting the requested continuance outweighed the speedy trial interests of the public and the defendant, making the entire period through the March 2026 trial date excludable under (h)(6) and (h)(7)(A).[5]

On January 23, 2026, Curtis filed a motion to suppress certain evidence. On July 17, 2026, following a June 17, 2026, motion hearing, the court entered an order denying the motion to suppress. In that order, the court expressly found that the entire time period during which this motion was pending and under advisement was excluded under § 3161(h)(1)(D) and (H).[6]

On January 22, 2026, Curtis's co-defendant, Chavis, filed a motion to continue. On February 2, 2026, the court held an on-the-record scheduling conference, at which the government orally moved for a continuance to get all defendants on the same schedule. Later that same

---

[5] *See supra* note 2.

[6] In addition, on April 6, 2026, Curtis filed a related motion for a *Franks* hearing with respect to the same evidence. That motion was denied by a separate order on the same date—July 17, 2026. This overlapping period is excludable for the very same reasons.

day, the court entered orders granting Chavis's and the government's motions to continue and setting the defendants down for a joint trial date to commence on June 26, 2026. In that order, the court expressly found that the ends of justice served by granting the requested continuance outweighed the speedy trial interests of the public and the defendant, making the entire period through the June 2026 trial date excludable under (h)(6) and (h)(7)(A).[7]

On May 27, 2026, counsel for Curtis's co-defendant filed a motion to withdraw as his attorney due to a conflict of interest. On May 29, 2026, a hearing on the motion was held and the motion was granted. New counsel, Attorney Rude, was appointed to represent co-defendant Chavis on June 3, 2026.

At a June 17, 2026, motions hearing, the court sua sponte raised the issue of a continuance of the pending jury trial and, after stating its findings and rationale, advised the parties that the jury trial would be

---

[7] We reached this finding that the ends of justice served by granting the requested continuance outweighed the best interest of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including the complexity of the case due to the number of defendants—six at the time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled.

further continued. On June 18, 2026, the court entered a written order continuing the jury trial until August 27, 2026. In that order, the court expressly found that the ends of justice served by granting the requested continuance outweighed the speedy trial interests of the public and the defendant, making the entire period through the August 2026 trial date excludable under (h)(6) and (h)(7)(A).[8,9]

---

[8] We reached this finding that the ends of justice served by granting the sua sponte continuance outweighed the best interests of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including: (a) the complexity of this case due to the number of defendants—three at this time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled, particularly with respect to Chavis's newly appointed defense counsel; (b) failing to continue the jury trial under the circumstances presented was likely to result in a miscarriage of justice, inasmuch as proceeding to trial as previously scheduled might operate to deprive Chavis of his right to the effective assistance of counsel; and (c) failing to continue the jury trial under the circumstances presented would deny defense counsel the reasonable time necessary for effective preparation, taking into account due diligence. We further note that Attorney Rude had filed a motion to withdraw on June 9, 2026, based upon a scheduling conflict—at the time he accepted the appointment, he was unaware that his client would not agree to a motion for continuance of the previously scheduled June trial date, during which period Attorney Rude was not available for trial. Following the motion hearing at which the court sua sponte continued the jury trial, Attorney Rude withdrew his motion to withdraw.

[9] In addition, on June 16, 2026, Curtis filed the instant motion to sever, together with a brief in support. The motion became ripe two weeks later, on June 30, 2026, when the government failed to file any brief in

*(continued on next page)*

Based on the foregoing, we find that *no unexcluded time has accrued* toward the Speedy Trial Act clock for this case.

**B. Sixth Amendment Speedy Trial Clause**

Curtis expressly argues that failure to grant his request for severance will risk a violation of his constitutional right to a speedy trial.

"The United States Supreme Court has adopted a flexible balancing test to adjudicate alleged violations of the Sixth Amendment Speedy Trial Clause." *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993). The four factors to be considered are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "All factors must be considered and weighed as no one factor is dispositive or 'talismanic.'" *Hakeem*, 990 F.2d at 759 (quoting *Barker*, 407 U.S. at 533).

"The threshold question under *Barker* is whether the length of delay was sufficient to trigger analysis of the remaining factors. This involves a 'double enquiry.'" *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) (quoting *Doggett v. United States*, 505 U.S. 647, 652

---

response. Under (h)(1)(D) and (h)(1)(H), the time period from June 16, 2026, through July 30, 2026, is excludable time, which overlaps the excludable time periods described in the main text above.

(1992)).

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett*, 505 U.S. at 651–52 (citations omitted). "In other words, a court first decides whether the delay is long enough that it should trigger analysis of other *Barker* factors. If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citation omitted). Under this first *Barker* factor, "[t]he length of delay is measured 'from the date of arrest or indictment, whichever is earlier, until the start of trial.'" *Claxton*, 766 F.3d at 294 (quoting *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)). The Third Circuit has "previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors." *Battis*, 589 F.3d at 678 (citing *Hakeem*, 990

F.2d at 760).

In this case, the original indictment against Curtis was returned by federal grand jury on June 10, 2025, and trial is currently scheduled to commence on August 27, 2026, fourteen months and seventeen days after the date of the defendant's formal accusation. Because this period of time exceeds the fourteen-month threshold recognized in *Hakeem*, we are required to consider and balance the remaining *Barker* factors. This first factor weighs in Curtis's favor, albeit only somewhat as the anticipated delay is only slightly longer than the fourteen-month threshold.[10]

The second *Barker* factor is the reason for the delay. Our inquiry here is "whether the government or the criminal defendant is more to blame for the delay." *Doggett*, 505 U.S. at 651.

> Delays attributable to the Government fall into one of three categories: [(1)] intentional delay intended to hamper the defense which weighs heavily against the Government, [(2)] more neutral delay including delay attributable to negligence and crowded court dockets which weighs less heavily against the Government, and [(3)] justifiable delay by the Government, such as to procure a missing witness.

*Judge v. United States*, 119 F. Supp. 3d 270, 294 (D.N.J. 2015) (citing

[10] As of this writing, the delay is less than fourteen months, with trial yet a month away.

*Battis*, 589 F.3d at 679); *see also Claxton*, 766 F.3d at 294–95; *Hakeem*, 990 F.2d at 766. "By contrast, delay caused by the defense weighs against the defendant." *Claxton*, 766 F.3d at 295 (quoting *Battis*, 589 F.3d at 680); *see also Hakeem*, 990 F.2d at 766. This includes delay caused by the defendant, by his counsel, and by his co-defendants or their counsel. *Judge*, 119 F. Supp. 3d at 294; *see also Claxton*, 766 F.3d at 295; *Battis*, 589 F.3d at 679–80. "In evaluating this factor, we subtract the amount of delay caused by the defendant from the delay caused by the Government." *Battis*, 589 F.3d at 680.

The original fourteen-count indictment against eight defendants, including Curtis, was returned by the grand jury and filed under seal on June 10, 2025. Over the next two weeks, Curtis and five of his co-defendants made their initial appearances with respect to the original indictment.[11] Initially, Curtis and these co-defendants were each scheduled separately for jury trial dates in August and September based on the date of their initial appearances; Curtis was originally scheduled for an August 18, 2025, jury trial.

[11] Jonathan Bishop, Joshua Forrester-Westad, Francis Vasquez-Familia, Leroy Scriven, and Carlos Vasquez.

A fifteen-count superseding indictment, which expanded the full roster of defendants to nine, was returned by the grand jury and filed under seal on June 24, 2025.

On June 30, 2025, Curtis filed a motion to continue. In this motion, counsel noted that he had not yet received discovery from the government, and he would need time to review it, to conduct an independent investigation, to determine whether any pretrial motions were warranted and advisable, to discuss the evidence and the advisability of any pretrial motions with his client, and to prepare any such motions for filing.[12] On July 1, 2025, the court entered an order granting the motion to continue filed by Curtis, rescheduling him for a jury trial set to commence on September 15, 2025.

By the end of July, a sixth co-defendant had made his initial appearance,[13] and the court had—through a series of orders granting motions to continue separately filed by the several co-defendants—scheduled all active defendants for a single joint jury trial scheduled to

[12] Although the motion itself only expressly addressed continuance of the pretrial motions deadline, omitting any reference to the trial itself, the proposed order that accompanied the motion expressly provided for continuance of the August 2025 jury trial to a later date.

[13] Reneard Harris.

commence on October 6, 2025.

In August and September, several of Curtis's co-defendants filed motions to continue the joint jury trial,[14] and the government filed its own motion to continue with respect to Curtis, who had declined to consent to a continuance. Ultimately, by the end of September, the court had—through a series of orders granting each of those motions—rescheduled the defendants for two joint jury trials set to commence on November 10, 2025, and December 8, 2025.[15]

In mid-October, Curtis's seventh co-defendant[16] made her initial appearance and was scheduled for the joint jury trial set to commence on December 8, 2025.

On October 22, 2025, the court granted a motion filed by the government that same day to continue the jury trial with respect to co-defendant Curtis, rescheduling him for the joint jury trial set to commence on December 8, 2025. On October 27, 2025, the court granted motions to continue filed by Vasquez and Scriven, rescheduling Vasquez

---

[14] Vasquez-Familia, Harris, Forrester-Westad, Scriven, and Vasquez each filed a motion to continue.

[15] Curtis, Scriven, and Vasquez were scheduled for a November 10 trial, and the other four were scheduled for a December 8 trial.

[16] Pamela Montano.

for the joint jury trial set to commence on December 8, 2025, and rescheduling Scriven for a jury trial set to commence on December 15, 2025.

On October 30, 2025, Curtis's eighth co-defendant[17] made his initial appearance and was scheduled for the joint jury trial set to commence on December 15, 2025. That same day, two of his co-defendants, Vasquez-Familia and Harris, filed for a further continuance of the joint jury trial scheduled to commence on December 8, 2025.

On November 3, 2025, a third co-defendant, Forrester-Westad, filed a similar motion to continue. Later that same day, the court held a scheduling conference with respect to this case. The next day, the court entered an order granting the defendants' three outstanding motions to continue and consolidating the cases against all nine defendants for a single joint jury trial set to commence on March 16, 2026.

On January 22, 2026, one of Curtis's co-defendants filed a motion to continue the March 2026 jury trial. On January 23, 2026, another co-defendant filed a similar motion to continue the trial, and Curtis filed a motion to suppress certain evidence and his first motion to sever.

[17] Daniel Chavis.

On February 2, 2026, the court held a status conference, at which the government made a similar motion for a continuance with respect to all other defendants.[18] Later that same day, the court entered orders granting the three outstanding motions to continue and rescheduling the joint jury trial to commence on June 26, 2026.

On March 27, 2026, Curtis's counsel, Elliot Smith, Esq., moved to withdraw as attorney for Curtis due to unspecified professional considerations. On April 13, 2026, the court held a hearing on the motion and granted it. Later that same day, Curtis's current counsel, Gino Bartolai, Esq., was appointed to represent Curtis.

On May 27, 2026, Attorney Rotteveel moved to withdraw as attorney for co-defendant Chavis due to a recently discovered conflict of interest. On May 29, 2026, the motion was granted, and on June 3, 2026, less than thirty days before trial was scheduled to commence, Attorney Rude was appointed to represent co-defendant Chavis.

On June 17, 2026, the court held a hearing on several pretrial

[18] We note that the case against defendant Vasquez-Familia was severed from those against the other defendants on January 28, 2026, due to his status as a fugitive, which rendered him unavailable for trial.

motions that were pending.[19] At the motions hearing, the court sua sponte raised the necessity of another continuance of the joint jury trial, primarily due to the recent appointment of new counsel to represent Chavis. In light of the nature and complexity of the case, the risk that proceeding to trial as scheduled might operate to deprive Chavis of his right to the effective assistance of counsel, and the need for his newly appointed counsel to have a reasonable amount of time to prepare an effective defense, the court continued the joint jury trial until August 27, 2026.

The original indictment in this case was filed on June 10, 2025. Within days of that filing, the first four co-defendants in this case (including Curtis himself) made their initial appearances and were scheduled for the first joint jury trial date set in this case—August 18, 2025. While properly attributable to the government, this period of less than seventy days[20] is the ordinary pretrial investigation and

[19] The motions hearing originally had been scheduled for May 1, 2026. Due to an extension of the pretrial motions deadline on a motion by Curtis's counsel, the motions hearing date was rescheduled to May 29, 2026. It was then rescheduled once again, to June 17, 2026, due to the withdrawal of Chavis's counsel, Attorney Rotteveel.

[20] *Cf.* 18 U.S.C. § 3161(c)(1).

preparation period common to all federal prosecutions, and there is nothing in the record before us to suggest that the government did not act in good faith or with reasonable diligence to advance the case at that point. Thus, we find this initial period of 69 days to be a justifiable delay with no appreciable weight against the government.

These initial jury trial dates were continued several times on motions by Curtis and his co-defendants, until a joint jury trial for all nine defendants was ultimately scheduled to commence on March 16, 2026. That trial date was then further continued until June 26, 2026, on a motion to continue by one of Curtis's co-defendants. Thus, we find this second period of 312 days attributable to the defense, rather than the government.

The final continuance at issue, from June 26, 2026, until August 27, 2026, was granted by the court sua sponte. But the ultimate cause of this delay—co-defendant Chavis's recent change of counsel, which had been prompted by newly discovered conflicts of interest by his defense counsel—renders this period of 62 days attributable to the defense, rather than the government. *See Vermont v. Brillon*, 556 U.S. 81, 93–94 (2009) (delay caused by defendant's efforts to force withdrawal of defense

counsel attributable to defendant); *United States v. Stanley*, 396 Fed. App'x 482, 485 (10th Cir. 2010) (delay caused by substitution of counsel weighed against defendant); *United States v. Rowland*, Crim. No. 18-579-2, 2022 WL 445769, at *3 (E.D. Pa. Feb. 11, 2022) (delay caused by defense counsel's conflict of interest attributable to defendant).

Accordingly, we find it clear that the entire period of delay at issue here is attributable to the defense, and thus the second *Barker* factor weighs heavily in favor of the government.[21]

The third *Barker* factor is whether Curtis asserted his speedy trial right in a timely and proper manner. "Although delay in asserting the constitutional right to a speedy trial does not constitute a waiver, 'failure to assert the right will make it difficult for the [defendant] to prove that he was denied a speedy trial.'" *Hakeem*, 990 F.2d at 764 (quoting *Barker*, 407 U.S. at 532). "When a defendant is represented by counsel, he should identify a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance

[21] Even if we were to treat the initial 69-day period and the final 62-day period as "neutral" delays attributable to the government, the delays caused by the defense would still *significantly* outweigh any delay caused by the government.

of success. By contrast, informal correspondence to the court by a represented defendant is less convincing." *Battis*, 589 F.3d at 681 (citation omitted and internal quotation marks omitted).

Although represented by counsel, Curtis submitted informal pro se correspondence to the court asserting his right to a speedy trial—a pro se "notice" dated July 10, 2025, and received by the court and filed on August 1, 2025. Curtis's defense counsel echoed Curtis's general opposition to continuances and the assertion of his speedy trial rights in a September 23, 2025, opposition brief filed in response to a motion to continue by the government, on the record at a November 3, 2025, status conference, and in a February 2, 2026, letter to the court. Although the instant motion to sever based on potential speedy trial violations was not filed until June 16, 2026—more than a year after the original indictment was filed—it was nevertheless preceded by numerous and consistent informal assertions of his speedy trial rights by Curtis, both personally and by his counsel of record.

Under these circumstances, we find that Curtis asserted his speedy trial right in a timely and proper manner, and thus this third *Barker* factor weighs in favor of the defendant.

The fourth *Barker* factor is prejudice, the "most important factor." *Hakeem*, 990 F.2d at 760. "[T]he burden of showing prejudice lies with the individual claiming the violation . . . ." *Id.* "The Supreme Court has outlined two ways in which a defendant can establish prejudice." *Battis*, 589 F.3d at 682.

First, a defendant can establish actual or specific prejudice by "affirmative proof of particularized prejudice" or "specifically demonstrable" harm. *See Doggett*, 505 U.S. at 655. The Supreme Court has "identified three types of harm that arise from unreasonable delay between formal accusation and trial: (1) 'oppressive pretrial incarceration;' (2) 'anxiety and concern of the accused;' and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.'" *Claxton*, 766 F.3d at 296 (quoting *Doggett*, 505 U.S. at 654).

> Of the three types of prejudice, impairment of the accused's defense is the most serious. Credit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case. Prejudice that affects the defendant's ability to defend himself, though, "skews the fairness of the entire system."

*United States v. Wilson*, 216 F. Supp. 3d 566, 579 (E.D. Pa. 2016)

(citations omitted) (first citing *Barker*, 407 U.S. at 528; then citing *Hakeem*, 990 F.2d at 762; and then quoting *Barker*, 407 U.S. at 532).

Alternatively, "prejudice can be presumed if a sufficiently long delay is attributable to the government." *Id.* (citing *Doggett*, 505 U.S. at 658); *see also Doggett*, 505 U.S. at 555 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). "[T]he Third Circuit has held that a delay of thirty-five months is sufficient to presume prejudice, but a delay of fourteen months is not." *Wilson*, 216 F. Supp. 3d at 579 (citing *Battis*, 589 F.3d at 683, and *Hakeem*, 990 F.2d at 764). Moreover, "[t]his presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government affirmatively proves that the delay left the defendant's ability to defend himself unimpaired." *Battis*, 589 F.3d at 682 (internal quotation marks and brackets omitted) (citing *Doggett*, 505 U.S. at 68 & n.1).

In this case, the total delay of fourteen months and seventeen days between indictment and trial, almost all of which is attributable to the defense rather than the government, "is insufficient to allow an inference of prejudice solely from the length of the delay." *Hakeem*, 990 F.2d at 764

(finding 14½ month delay not presumptively prejudicial); *see also Claxton*, 76 F.3d at 296–97 (finding 3½ year delay not presumptively prejudicial where defendant was free during the entire 19-month period attributable to the government).

The defendant has failed to adduce any affirmative proof of particularized prejudice or specifically demonstrable harm. Absent any evidence of substandard conditions,[22] a fourteen month period of pretrial detention does not demonstrate oppressive pretrial incarceration. *See Hakeem*, 990 F.2d at 761. In his motion papers, Curtis does not allege anxiety or concern as a basis for his speedy trial claim, and he identifies no specifically demonstrable impairment to his defense.[23]

---

[22] Curtis has not alleged, much less shown, any substandard conditions of confinement.

[23] Curtis suggests only that the delay advantages the government because it has pursued a "divide and conquer" strategy and, through the passage of time, several of his co-defendants have entered guilty pleas. Curtis disclaims knowledge of any cooperation agreements between the government and these co-defendants, but he suggests that any such agreements to cooperate against him would "underscore" the prejudice he has suffered. Nevertheless, Curtis has failed to adduce any evidence to raise these concerns above the level of mere speculation, which is insufficient to satisfy his burden of showing specific prejudice due to impairment of his defense. *See United States v. Green*, 471 F. Supp. 3d 577, 601 (M.D. Pa. 2020). Moreover, even if some or all of these co-defendants did enter into cooperation agreements and provided

*(continued on next page)*

Accordingly, we find that the defendant has failed utterly to demonstrate any actual or presumptive prejudice as a result of the delay at issue in this case, and thus the fourth *Barker* factor—the "most important" factor—weighs heavily in favor of the government.

In weighing the *Barker* factors, we note that the length-of-delay and assertion-of-speedy-trial-rights factors both weigh in the defendant's favor, albeit only somewhat so with respect to the former, while the reason-for-the-delay and prejudice factors both weigh heavily in favor of the government. Based on our consideration of these four factors, we conclude that the balance weighs in favor of the government, and Curtis has not demonstrated a Sixth Amendment speedy trial violation.

---

inculpatory evidence against Curtis, this is not the sort of prejudice cognizable under the fourth *Barker* factor. *See United States v. Alvarez*, 541 Fed. App'x 80, 84–85 (2d Cir. 2013) (summary order) (rejecting claim that, "but for the prolonged delay, [a] co-defendant-turned-cooperating-witness . . . would not have been available to provide devastating evidence" to the government because "this is not the sort of prejudice contemplated by *Barker*'s fourth factor"); *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (concluding that a delay that permitted the government to "procure the testimony of [a] co-defendant and the primary witness against him [was not prejudicial] . . . in the sense envisioned by the *Barker* analysis"); *see also United States v. Smith*, 277 F. Supp. 3d 405, 418 (W.D.N.Y. 2016) (citing *Alvarez*, 541 Fed. App'x at 84).

**C. Conclusion**

For the foregoing reasons, the defendant's motion to sever (Doc. 436) will be denied.

An appropriate order follows.

Dated: July 31, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge